IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DORIS R. NEGRON, as Administrator for** : | **CIVIL ACTION NO. 09-330** |
| the Estate of Wilfred Negron, Sr., and : | |
| **DORIS R. NEGRON, Individually,** : | |
| : | |
| v. : | |
| : | |
| **OXFORD AIRPORT TECHNICAL** : | |
| **SERVICES, CLYDE MACHINES, INC. and** : | |
| **DIVERSIFIED INSPECTIONS/ITL** : | |

OPINION

**NORMA L. SHAPIRO, J.**                                                                 May 6, 2009

Doris Negron, individually and as administrator of her husband's estate, filed this wrongful death and survival action in state court for claims arising from the death of her husband, Wilfred Negron. The action was properly removed to federal court. The matter comes before the court on defendant Clyde Machines, Inc.'s ("Clyde") motion to dismiss for lack of personal jurisdiction. The motion will be denied.

I.      BACKGROUND

Wilfred Negron worked for Northwest Airlines ("Northwest") at Philadelphia International Airport. On May 25, 2006, plaintiffs allege Mr. Negron fell from a towable staircase while performing grooming activities on an airplane. He died soon after his fall. Plaintiffs claim the accident was caused in part by a dangerous defect in the staircase, purchased by Northwest from Clyde in September, 2000. Clyde, a manufacturer of non-motorized aviation ground support equipment, admits it sold the staircase to Northwest and delivered it to Washington National Airport at Northwest's request, but disclaims knowledge of how or when

1

Northwest relocated the staircase to Philadelphia International Airport. Def.'s Br., Ex. B (paper no. 26).

Clyde, a Minnesota corporation, maintains its sole place of business in Glenwood, Minnesota. Challenging the court's exercise of personal jurisdiction, Clyde avers: (1) it is not licensed to do business in Pennsylvania; (2) it maintains no office or place of business in Pennsylvania; (3) it has no employees in Pennsylvania; (4) it does not solicit business in or direct its advertising toward Pennsylvania; (5) it has no assets in Pennsylvania; (6) it does not maintain any bank accounts with financial institutions in Pennsylvania; and (7) for the last ten years, sales to businesses or persons located in Pennsylvania accounted for less than one third of one percent of its total sales. Def.'s Br., Ex. C (paper no. 10).

Plaintiffs, arguing that Clyde's contacts with Pennsylvania are more substantial, requested jurisdictional discovery; the court granted plaintiffs' request. Order of Feb. 26, 2009 (paper no. 16). Discovery revealed that Clyde shipped approximately 2,277 products into Pennsylvania from April 15, 1998 to December 28, 2008. Pl.'s Br., Ex. D (paper no. 25). Clyde contends the volume of products shipped to Pennsylvania is insignificant relative to its total sales. Over the last decade, Clyde's Pennsylvania sales comprised an average of 0.2% of its total revenue:

| Year | Total Sales | Pennsylvania Sales |
|------|-------------|--------------------|
| 1998 | $ 7,050,079 | $ 35,675 |
| 1999 | $ 6,969,265 | $ 2,842 |
| 2000 | $ 6,262,341 | $ 3,333 |
| 2001 | $ 6,393,228 | $ 152 |
| 2002 | $ 3,665,701 | $ 176 |
| 2003 | $ 3,882,202 | $ 7,846 |
| 2004 | $ 4,008,409 | $ 21,695 |
| 2005 | $ 4,919,176 | $ 22,396 |
| 2006 | $ 5,291,421 | $ 15,679 |

|      |              |          |
|------|--------------|----------|
| 2007 | $ 6,447,336  | $ 6,296  |
| 2008 | $ 7,560,493  | $ 6,770  |

Def.'s Br., Ex. H (paper no. 26). Of the products it shipped to Pennsylvania, Clyde claims most were replacement parts, such as bushings, nuts, bolts, pins and casters, rather than ground support equipment, such as maintenance stands, pallet trailers, slave pallets, tow bars and stationary racks. Clyde argues the jurisdictional inquiry should focus on its sales of ground support equipment because it derives only a small share of its revenues from the sale of replacement parts. Clyde characterizes its sales to Pennsylvania as too "*de minimis*, insubstantial, and infrequent" to subject it to personal jurisdiction in this forum. Def.'s Supp. Br. at 13 (paper no. 26).

## II. DISCUSSION

### A. Subject Matter Jurisdiction

This action, originally filed in state court, was removed by the International Association of Machinist and Aerospace Workers Local 1776 ("IAMAW") under 28 U.S.C. § 1331 (federal question jurisdiction). IAMAW argued that certain of plaintiffs' state law claims were preempted by and not cognizable under federal labor law. The court granted IAMAW's motion to dismiss, but retained subject matter jurisdiction over the remaining state law claims under 28 U.S.C. § 1332 (diversity jurisdiction) because there is complete diversity among the remaining parties and there is the requisite amount in controversy. Order of Feb. 18, 2009 (paper no. 14.).

### B. Personal Jurisdiction

After a defendant files a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the burden shifts to the plaintiff to come forward with evidence

of sufficient contacts between the defendant and forum state. Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1223 (3d Cir.1992). The plaintiff must sustain its burden of proof through affidavits or admissible evidence; it may not rely on the pleadings alone. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984).

A federal district court may exercise personal jurisdiction over a nonresident defendant to the extent authorized by the law of the state in which the court sits. Fed. R. Civ. P. 4(k). See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). The Pennsylvania long-arm statute permits the exercise of jurisdiction "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States," 42 Pa. Cons. Stat. § 5322(b), so the question is whether the exercise of personal jurisdiction over Clyde is constitutional. See Mellon Bank, 960 F.2d at 1221.

Under the Fourteenth Amendment Due Process Clause, personal jurisdiction may be asserted over a nonresident so long as the defendant has certain "minimum contacts" with the forum so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). There are two forms of personal jurisdiction: specific and general.[1] Specific jurisdiction exists when: (1) the defendant has "purposefully directed" its activities toward the forum state and the plaintiff's injury arises from, or is related to, those activities; and (2) the exercise of jurisdiction comports

---

[1] The Third Circuit Court of Appeals has "always treated general and specific jurisdiction as analytically distinct categories, not two points on a sliding scale. If the defendant maintains continuous and substantial forum affiliations, then general jurisdiction exists. If the defendant's contacts fall short of that standard, then at least one contact must give rise or relate to the plaintiff's claim." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 321 (3d Cir. 2007).

4

with fair play and substantial justice. Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006). General jurisdiction exists when a cause of action does not arise out of the defendant's forum-related activities, but the defendant has "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).

### 1. Specific Jurisdiction

Specific jurisdiction, requiring a relationship between the plaintiff's claims and the defendant's contacts with the forum state, reflects an implied jurisdictional *quid pro quo*: in exchange for receiving protection under the forum state's laws, a nonresident submits to personal jurisdiction in the forum for claims related to its activities. The causal connection between the defendant's contacts and the plaintiff's claim "can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." O'Connor, 496 F.3d at 323. A nonresident defendant may create minimum contacts with the forum by selling products into the stream of commerce that give rise to injuries within the forum state. See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 112 (1987). The Third Circuit Court of Appeals has stated this is a "means of sustaining jurisdiction in products liability cases in which the product has traveled through an extensive chain of distribution before reaching the ultimate consumer." DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 285 (3d Cir.), *cert. denied*, 454 U.S. 1085 (1981). A nonresident defendant may derive substantial benefits from the legal protections of the forum even if it was not directly responsible for transporting the allegedly harmful product into the forum state.

In Asahi, a California citizen was injured in a motorcycle accident in California; he filed a products liability suit in California state court against the Taiwanese manufacturer of the motorcycle's tire tube. The Taiwanese manufacturer filed a cross-claim against Asahi Metal Industry Co., Ltd. ("Asahi"), a Japanese corporation, for indemnification on grounds that Asahi had manufactured a defective component of the tube. Asahi challenged personal jurisdiction over it in the indemnity action because: (1) it had no offices, property or agents in California; (2) it did not solicit business in California; and (3) it made no direct sales in California. Id. at 107-08. The Supreme Court held that Asahi was not subject to personal jurisdiction in California just because it placed its product into the stream of commerce even if its product caused harm in California. Id. at 112.

In its plurality opinion, the Court proposed three tests for stream of commerce jurisdiction: (1) whether conduct by the defendant shows an intent to serve the market in the forum state; id. at 112 (O'Connor, J.); (2) demonstration of an awareness that the final product is marketed in the forum state in the "regular and anticipated flow of products;" id. at 117 (Brennan. J., concurring); and (3) the volume, value and hazardous nature of the goods entering the forum state; id. at 122 (Stevens, J., concurring).

In Renner v. Lanard Toys, the Third Circuit Court of Appeals emphasized certain factors as important:

> Although the 4-4-1 vote of the Supreme Court makes it difficult to even attempt to promulgate the last word on the "stream of commerce" theory, certain guidelines have emerged. It is clear, for example, from Asahi and its precursors that there must have been some "purposeful availment" by the defendant of the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting

6

> activities within the forum State"). Even under Justice Brennan's view, the mere knowledge or awareness that one's products will end up in the forum state without some regularity of shipment would not be enough. The contact must be purposeful, rather than incidental, because the stream of commerce does not refer to "unpredictable currents or eddies." Asahi, 480 U.S. at 117 (Brennan, J., concurring).
>
> It also appears from Asahi and its precursors that the absence of direct sales or shipments into the forum is not dispositive. Although, of course, the presence of direct shipments will show the defendant's purposeful availment, it appears that the plaintiff may show "affiliating circumstances" by defendant, see World-Wide Volkswagen, 444 U.S. at 295, in other ways.

Renner v. Lanard Toys, 33 F.3d 277, 282 (3d Cir. 1994).

In Renner, defendant, a Hong Kong toy manufacturer, distributed its products through independent intermediaries who sold the products to retail outlets in Pennsylvania; plaintiff was injured when one of defendant's toys exploded. Renner, 33 F.3d at 277-78. Contesting personal jurisdiction, defendant averred: (1) it manufactured toys in Hong Kong and sold them to independent distributors F.O.B. (freight-on-board) Hong Kong; (2) it did not sell or manufacture toys in Pennsylvania; and (3) it had no way of knowing or controlling where distributors marketed its products. Id. at 278. The court found the ultimate sale of the defendant's toys in Pennsylvania did not show "purposeful availment" of the state's market and remanded to allow further jurisdictional discovery. Id. at 283-84.

In Pennzoil Prods. Co. v. Colelli & Assocs., defendant, an Ohio company, sold an allegedly harmful cleaning solvent to crude oil producers in Ohio, who sold crude oil containing the solvent to plaintiff, a Pennsylvania oil refinery; plaintiff claimed defendant's solvent damaged its refinery. Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 199 (3d Cir. 1998). The court held the defendant subject to personal jurisdiction in Pennsylvania because

three pertinent contacts established purposeful availment: (1) sixty percent of the oil tainted by defendant's solvent was sold to Pennsylvania refineries; (2) defendant knew the oil was sold in Pennsylvania; and (3) defendant performed research on the solvent to develop a product for the Pennsylvania market. Id. at 206. Because defendant's contacts satisfied all three Asahi criteria, the court declined to adopt any single criterion as the law of this circuit. Pennzoil, 149 F.3d at 206-07.

Clyde's contacts with Pennsylvania, more like the facts in Pennzoil than Renner, satisfy all three Asahi criteria because: (1) Clyde's conduct shows an intent to serve the Pennsylvania market; (2) Clyde was aware its products were marketed in Pennsylvania in the regular and anticipated course of business; and (3) the volume, value and hazardous nature of the products that Clyde shipped into Pennsylvania favor the exercise of personal jurisdiction.

Clyde's intent to serve the Pennsylvania market is demonstrated by its direct shipment of thousands of products into Pennsylvania. While Clyde might not have advertised its products in Pennsylvania, the evidence shows that Clyde obtained business from residents of the forum state. Ron Erno, Clyde's vice president of sales, testified, "I'm sure that we send parts to Philadelphia and to Pittsburgh, they have those two major airports . . .." Erno Dep. 3/19/09, p. 35, Pl.'s Br., Ex. F (paper no. 24). Clyde also admitted shipping products it sold to Northwest to locations in Pennsylvania. See Def.'s Br., Ex. F (paper no. 26).

Clyde was aware that its products, including the allegedly defective staircase, would be used in Pennsylvania. Clyde's personnel knew that its customers, including Northwest, often purchased products from Clyde in Minnesota with the intention of using them in Pennsylvania. Mr. Erno testified, "I sell to Northwest Airlines; they [*sic*] distribute their product. I sell it to

Northwest Airlines in Eagan, Minnesota, I know they send it to all of their airports. They have an airport in Philadelphia, they have a spot in Philadelphia, they have them in Philadelphia, so I'm assuming that they have some of our equipment." Erno Dep. 3/19/09, p. 36-37, Pl.'s Br., Ex. F (paper no. 24).

The volume, value and hazardous nature of the products that Clyde shipped into Pennsylvania favor the exercise of personal jurisdiction. Even though Clyde's Pennsylvania sales comprised a small portion of its total revenues, Clyde derived a significant amount of income from Pennsylvania over the last ten years. Pl. Br., Ex. E (paper no. 24) (purchase orders documenting Clyde's shipments to Pennsylvania). Because plaintiffs allege Clyde's product caused Mr. Negron's fatal accident, consideration of the hazardous nature of Clyde's products favors the exercise of stream of commerce jurisdiction. Clyde's argument that the jurisdictional inquiry should focus on its sales of ground support equipment rather than replacement parts is unpersuasive and unsupported by authority. Clyde purposefully availed itself of the protections of Pennsylvania law by selling the allegedly defective staircase into the stream of commerce with knowledge that it would be used by Northwest in the forum state.

Having found that minimum contacts exist, the exercise of personal jurisdiction is consistent with notions of "fair play and substantial justice." See Int'l Shoe, 326 U.S. at 316. The fairness factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of a controversy, and the shared interest of the several states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477. There is a heavy burden on a defendant who seeks to demonstrate

9

a lack of fairness or substantial justice. Grand Entertainment Group v. Star Media Sales, 988 F.2d 476, 483 (3d Cir. 1993). "Once the plaintiff has made out a prima facie case of minimum contacts, as here, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id.

Neither of Clyde's briefs analyzes the "fair play and substantial justice" element of personal jurisdiction. In the absence of any argument from Clyde that the exercise of personal jurisdiction is unreasonable, the court finds it fair and just because: (1) plaintiffs have a strong interest in litigating their claims in a convenient, local forum; (2) it would be inefficient for the court, burdensome to plaintiffs and possibly unfair to the other defendants for plaintiffs to file separate actions in Pennsylvania and Minnesota for claims arising from the same accident; (3) Pennsylvania has an interest in adjudicating claims arising from injuries caused by defective products imported into the state; and (4) Pennsylvania and Minnesota share an interest in compensating persons injured by unreasonably dangerous products.

### 2. General Jurisdiction

Plaintiffs argue in the alternative that Clyde is subject to general jurisdiction. Since Clyde is subject to specific jurisdiction, the court need not address this argument.

## III. CONCLUSION

Defendant Clyde Machines Inc.'s motion to dismiss for lack of personal jurisdiction is denied. Clyde purposefully availed itself of the benefits of Pennsylvania law by directing its activities toward the forum state; plaintiffs' injuries relate to those activities; and the exercise of jurisdiction comports with fair play and substantial justice. An appropriate order follows.