IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DORIS R. NEGRON**, as Administrator for the Estate of Wilfred Negron, Sr., and **DORIS R. NEGRON**, Individually, | : CIVIL ACTION NO. 09-330 : : : |
| v. | : : |
| **OXFORD AIRPORT TECHNICAL SERVICES, CLYDE MACHINES, INC.** and **DIVERSIFIED INSPECTIONS/ITL** | : : : |

OPINION

**NORMA L. SHAPIRO, J.**                                             June 11, 2009

      Doris Negron, individually and as administrator of her husband's estate, filed this wrongful death and survival action in state court for claims arising from the death of her husband, Wilfred Negron. The action was properly removed to federal court. By Order of May 6, 2009, the court denied defendant Clyde Machines, Inc.'s ("Clyde") motion to dismiss for lack of personal jurisdiction. The matter comes before the court on Clyde's motion for reconsideration or, in the alternative, certification of an interlocutory appeal. The motion will be denied.

**I.     BACKGROUND**

      Wilfred Negron worked for Northwest Airlines ("Northwest") at Philadelphia International Airport. On May 25, 2006, plaintiffs allege Mr. Negron fell from a towable staircase while performing grooming activities on an airplane. He died soon after his fall. Plaintiffs claim the accident was caused in part by a dangerous defect in the staircase, purchased by Northwest from Clyde in September, 2000. Clyde, a manufacturer of non-motorized aviation ground support equipment, admits it sold the staircase to Northwest and delivered it to

1

Washington National Airport at Northwest's request, but disclaims knowledge of how or when Northwest relocated the staircase to Philadelphia International Airport.

The court's Opinion of May 6, 2009 (paper no. 27) set forth the facts relevant to Clyde's challenge to personal jurisdiction; they will not be fully restated in this Opinion. In short, the court held Clyde subject to personal jurisdiction because: (1) the allegedly defective product entered Pennsylvania through the stream of commerce; (2) Clyde's direct sale of thousands of products to businesses located in Pennsylvania showed an intent to serve the Pennsylvania market; (3) Clyde was aware its products were marketed in Pennsylvania in the regular and anticipated course of business; and (4) the volume, value and hazardous nature of the products that Clyde shipped into Pennsylvania favored the exercise of personal jurisdiction. (Paper no. 27.)

On May 20, 2009, Clyde moved for reconsideration on grounds that D'Jamoos v. Pilatus Aircraft LTD, 2009 U.S. App. LEXIS 10268 (3d Cir. May 14, 2009), compels a different result. In the alternative, Clyde moves for certification of an interlocutory appeal. Plaintiffs did not file a response, but has opposed Clyde's jurisdictional challenge throughout these proceedings.

## II.  DISCUSSION

### A.  Reconsideration

Reconsideration serves to correct manifest errors of law or fact. Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3rd Cir. 1985). A court should grant a motion for reconsideration only if there is: 1) newly available evidence; 2) an intervening change in controlling law; or 3) a need to correct a clear error of fact or to prevent manifest injustice. Haymond v. Lundy, 205 F. Supp. 2d 390, 395 (E.D. Pa. 2002). Motions for reconsideration should not be used to reargue or

relitigate matters already decided.

Clyde argues that D'Jamoos represents an intervening change in controlling law. In D'Jamoos, defendant Pilatus, an airplane manufacturer based in Switzerland, designed and manufactured an airplane that crashed in Pennsylvania. The court described the chain of events between the plane's manufacture in Switzerland and subsequent crash in Pennsylvania:

> In 1999, Pilatus manufactured the aircraft involved in the Pennsylvania crash at its Stans, Switzerland, facilities. Thereafter Pilatus sold the aircraft to a French buyer. Its owner then resold the plane to a Swiss company (not Pilatus), which resold it to a Massachusetts company. The Massachusetts company brought the plane to the United States in the spring of 2003 and sold it to J2W Aviation, LLC, a Rhode Island company which based the aircraft in Rhode Island. Pilatus was not involved in any of the aircraft's resales, and its only contact with the plane after its original sale was some maintenance of it in Switzerland at the request of its then owners. Pilatus, however, had no contact with the aircraft after it left Europe.

D'Jamoos, 2009 U.S. App. LEXIS 10268 at *6. Pilatus sold a substantial quantity of airplanes to buyers in the United States through its subsidiary in Colorado,[1] but Pilatus itself had few contacts with Pennsylvania. "Pilatus's direct contacts within Pennsylvania, then, are limited to: (1) sending two employees to Pennsylvania to view displays at a potential supplier, and (2) purchasing $ 1,030,139 in goods or services from suppliers in Pennsylvania during the five-year period preceding this litigation." Id. at *22.

Affirming the District Court's dismissal for lack of personal jurisdiction, the Court of Appeals held: (1) plaintiffs' claims did not arise out of or relate to at least one of Pilatus's purposeful contacts with Pennsylvania; and (2) the subject aircraft did not enter Pennsylvania through the stream of commerce. Id. at *23, 25. The Court of Appeals reversed the District

---

[1] Pilatus Business Aircraft, Ltd., Pilatus's United States subsidiary, was not party to the litigation.

Court's denial of plaintiffs' motion to transfer the action to Colorado because Pilatus was subject to general jurisdiction there. "We are satisfied that the record demonstrates that appellants have established a prima facie basis for a conclusion that a Colorado court may exercise general jurisdiction over Pilatus predicated on its direct contacts within Colorado or, alternatively, on the conduct of [Pilatus's subsidiary] as its agent." Id. at *32.[2]

D'Jamoos does not compel a different result in this action because, unlike D'Jamoos: (1) the allegedly defective product entered Pennsylvania through the stream of commerce; (2) Clyde's direct sales to the forum demonstrate an intent to serve the Pennsylvania market; and (3) Clyde was aware that its customers transported its products into Pennsylvania even if they were initially delivered elsewhere. While Clyde delivered the allegedly defective product to Northwest in Washington, D.C., Clyde knew: (1) Northwest had a presence in Pennsylvania; (2) Northwest used Clyde's products in Pennsylvania; and (3) Northwest routinely ordered products from Clyde for delivery to Pennsylvania.

In contrast to the random situs of airplane disasters in D'Jamoos and Simeone v. Bombardier-Rotax GMBH, 360 F. Supp. 2d 665, 679 (E.D. Pa. 2005), on which Clyde also relies, the product from which Mr. Negron fell entered Pennsylvania as a result of Clyde's own customer transporting the product to a Pennsylvania location to which Clyde routinely shipped its products. The motion for reconsideration will be denied.

---

[2] Unlike D'Jamoos, Clyde did not file a motion to transfer this action to the District of Minnesota. In its prior Opinion on personal jurisdiction, the court explained the inefficiency, burden and unfairness of transferring part of this action (plaintiffs' claims against Clyde) to Minnesota and retaining the remainder (plaintiffs' claims against Oxford Airport Technical Services and Diversified Inspections/ITL). (Paper no. 27, p. 10).

B.    **Interlocutory Appeal**

Arguing in the alternative, Clyde moves for certification of an interlocutory appeal. Grounds for interlocutory appeal are governed by statute:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). The Court of Appeals cautions against piecemeal appeals. "With limited exceptions, we will not entertain an appeal unless the district court's order ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Bethel v. McAllister Bros., 81 F.3d 376, 381 (3d Cir. 1996).

Clyde argues that because D'Jamoos and Simeone compel a different result, substantial grounds for difference of opinion exist. However, as explained herein, D'Jamoos and Simeone are distinguishable. The court's order denying Clyde's motion to dismiss for lack of personal jurisdiction does not end the litigation; the jurisdictional issue can be addressed with any other issues at the conclusion of the action in the District Court. The motion for certification of an interlocutory appeal will be denied.

**III.    CONCLUSION**

The motion for reconsideration will be denied because D'Jamoos does not represent an

5

intervening change in controlling law. The motion for certification of an interlocutory appeal will be denied because D'Jamoos and Simeone are distinguishable; they do not provide substantial grounds for difference of opinion. An appropriate order follows.